UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OSCAR MACHADO, et al.,

          Plaintiffs,

    v.

C. NGYUEN, et al.,

          Defendants.

Case No.  12-cv-06501-JSC

**ORDER RE: DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. No. 59

      Plaintiffs Oscar Machado and Sandra Garcia individually and as successors in interest to the Estate of Alex Machado filed this civil rights action alleging violations of state and federal law arising from their son's suicide while incarcerated at Pelican Bay State Prison.  Now pending before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") for failure to state a claim.  After carefully considering the pleadings and evidence submitted by the parties, the Court GRANTS the motion in part and DENIES the motion in part.

<strong>ALLEGATIONS OF THE COMPLAINT</strong>

      This action arises out of the death of Plaintiffs' son, Alex Machado, while he was an inmate at Pelican Bay State Prison ("Pelican Bay").  Mr. Machado was transferred to Pelican Bay in February 2010 for an indefinite Security Housing Unit ("SHU") placement as a validated gang member of the Mexican Mafia.  (Dkt. No. 45 FAC at ¶ 19.)   In January 2011, correctional staff made the first of many mental health referrals on Mr. Machado's behalf indicating that he was experiencing increased anxiety, paranoid delusions, and hallucinations.  (*Id*. at ¶¶ 20-21.)   On June 5, 10, and 11, 2011 Pelican Bay mental health staff including Defendant E. Chernow, a staff psychologist, examined Mr. Machado for a suicide risk evaluation .  (*Id*. at ¶ 22.)  These evaluations estimated that he was "no risk," negligible risk," or a "low risk" for suicide.  (*Id*. at ¶

22.)

    On June 12, 2011, staff made another mental health referral and Mr. Machado was admitted to the Mental Health Crisis Bed ("Crisis Bed") unit due to possible suicidal ideation as he threatened staff that he would hang himself if he was forced to return to his cell in the SHU housing unit. (*Id*. at ¶ 23.) Mental health staff examined Mr. Machado and diagnosed him with Antisocial Personality Disorder with a moderate risk of suicide. (*Id*. at ¶¶ 23-24.) The next day, a Mental Health Placement Chrono was created for Mr. Machado and Pelican Bay mental health staff including Defendant Nguyen, the alleged Chief of Mental Health at Pelican Bay, placed Mr. Machado in the Mental Health Services Delivery System. (*Id*. at ¶ 25.) Mr. Machado was then evaluated by Defendant Nguyen who concluded that Mr. Machado might have an anxiety problem, but that he seemed capable of turning the anxiety on and off. Nguyen left an open psychiatric order for Thorazine. A few days later, Mr. Machado made a noose out of a mattress. (*Id*. ¶ at 28.) In response, Nguyen placed Mr. Machado on suicide watch and prescribed various psychotropic medications, although Nguyen also noted that Mr. Machado seemed to be attempting to get Crisis Bed staff's attention rather than seriously attempting suicide. (*Id*.) The next day, Mr. Machado was interviewed by Defendant Chernow, and she determined that Mr. Machado's statements that he was not suicidal were not credible because he presented with restless agitation and explosiveness, and a high level of unpredictability and changeability. (*Id*. at ¶ 29.) Four days later, Mr. Machado was discharged to the Correctional Clinical Case Management level of care and his imminent risk of suicide was decreased from moderate to low and his psychotropic prescriptions were discharged because of poor compliance. (*Id*. at ¶ 30.) Mr. Machado was then transferred to the Administrative Segregation Unit as he had been excluded from SHU and the clinical social worker assigned to him opined that he was mentally ill. (*Id*. at ¶ 31.)

    In early July 2011, Mr. Machado was readmitted to Crisis Bed due to psychotic decompensation and he was prescribed psychotropic medications, although he was still assessed as a low risk for imminent harm. (*Id*. at ¶ 34.) Ten days later, he was returned to the Administrative Segregation Unit and his psychotropic medications were discontinued due to poor

2

1   compliance.  (*Id*. at ¶¶ 35-36.)  The following month, Mr. Machado's diagnosis was changed to

2   Brief Psychotic Disorder in remission.  (Id. at ¶ 39.)

3          In October 2011, Mr. Machado was seen by the same clinical social worker who had

4   previously labeled him as mentally ill and his behaviors were described as briefly psychotic with

5   severe impairment in attention, memory, and reality, delusional and paranoid.  She planned to

6   continue to monitor him for decompensation.  (*Id*. at ¶ 41.)  On October 20, 2011, Mr. Machado

7   asked to see the same social worker, but during their visit he could not recall their discussion three

8   days earlier.  (*Id*. at ¶ 42.)

9          On October 23, 2011 at 1:00 a.m., the day before he died, Mr. Machado advised Pelican

10  Bay staff that he felt anxious, but he denied wanting to hurt himself.  (*Id*. at ¶ 43.)  He also

11  complained of chest pains and dizziness and asked to see the duty nurse.  (*Id*.  at ¶ 45.)

12  Psychiatric Technician ("PT") P. Vaughn examined Mr. Machado and summoned the duty nurse,

13  Registered Nurse Timme, sometime that morning.  PT Vaughn also completed a mental health

14  referral, marked it urgent, and faxed it to the mental health scheduler.  (*Id*. at ¶ 46.)  Mr. Machado

15  told Nurse Timme that he had demons in him, he was the devil, and he spoke as if he were a third

16  person speaking as the devil.  (*Id*. at ¶ 47.)  Although Mr. Machado denied thoughts of injuring

17  himself or others, Nurse Timme assessed him with a risk of injury with respect to delusional

18  thinking. (*Id*.)  Nurse Timme then contacted Defendant Chernow, the Facility A psychologist on-

19  duty, who "was mandated by established local operating procedures to conduct a direct mental

20  health evaluation when an inmate is in need of possible" Crisis Bed referral and/or an emergency

21  admission.  (*Id*. at ¶ 48.)  Chernow decided against conducting a direct mental health evaluation

22  "because she believed that a formal crisis assessment was not warranted at the time based on her

23  historical knowledge of Decedent, which was based on an evaluation she conducted in July 2011

24  and the presentation described by RN Timme."  (*Id*. at ¶ 49.)

25          A short while later, Mr. Machado again requested that his vital signs be checked and stated

26  that he was interested in taking medication.  (*Id*. at ¶ 50.)  PT Vaughn contacted Defendant

27  Nguyen and informed her of Mr. Machado's delusional ideation and hallucinations with demons.

28  Nguyen gave a verbal order for a one-time dose of Vistaril.  (*Id*.)  Five hours later, Mr. Machado

United States District Court
Northern District of California

1    again requested to speak to the on-duty psychiatric technician and he stated that he was feeling

2    pain and pressure all over his body, although he denied hearing voices or having suicidal

3    ideations. (*Id*. at ¶ 51.)  The on-duty psychiatric technician assessed him as more anxious,

4    unstable, less memory and talking in short and unclear words.  (*Id*.)  Mr. Machado was returned to

5    his cell and encouraged to practice relaxation techniques.  (*Id*.)  At 8:10 p.m., Mr. Machado

6    requested an additional dose of medication and the on-duty nurse, pled as Doe 1, was called and

7    "informed custody staff that Decedent had received all that he would get and would see the doctor

8    in the morning."  (*Id*. at ¶ 52.)  Plaintiff complained of chest pains three more times that night and

9    the on-duty nurse noted that he appeared very confused.

10           At 12:45 a.m. on October 24, 2011, Mr. Machado was discovered with a ligature around

11   his neck having hung himself with a bed sheet.  (*Id*. at ¶ 55.)

12           Before his death, Alex Machado's mother, Plaintiff Sandra Garcia, contacted correctional

13   counselors on multiple occasions to express concerns regarding his well-being.  (*Id*. at ¶ 56.)

14                                 **PROCEDURAL BACKGROUND**

15           Prior to filing this lawsuit, Plaintiffs, Alex Machado's mother and father, filed separate

16   claims with the Victim Compensation and Government Claims Board.  Plaintiff Sandra Garcia's

17   claim was denied by letter dated April 27, 2012 and sent to Ms. Garcia at a Florida address.  (Dkt.

18   No. 45-1 at 3.)  Plaintiff Oscar Machado's claim was denied by letter dated June 29, 2012 and

19   sent to him at a California address.  (*Id.* at 2.)

20           Plaintiffs filed this lawsuit on December 21, 2012.  Plaintiffs allege that Defendants C.

21   Nguyen, the Chief of Mental Health at Pelican Bay, E. Chernow, a staff psychologist for Facility

22   A at Pelican Bay, and Does 1-50, have failed to promulgate appropriate policies, guidelines and

23   procedures and have failed to rectify improper practices/customs with regard to the mental health

24   treatment and/or health and safety of Pelican Bay inmates.  (FAC at ¶ 16.)   Plaintiffs further

25   allege that Defendants were deliberately indifferent to their son's serious medical needs and

26   because of the CDCR's policies and procedures related to mental health care Defendants failed to

27   properly treat their son, which resulted in his suicide.  (*Id*. at ¶¶ 7-9, 15.)  Plaintiffs' Complaint

28   alleges the following claims: (1) a Section 1983 claim for deliberate indifference in violation of

the Eighth and Fourteenth Amendments; (2) failure to train and supervise; (3) negligence—wrongful death; (4) medical negligence; and (5) violation of California Government Code §§ 844.6 & 845.6.

The Court previously granted a motion to dismiss the complaint and Plaintiffs thereafter filed the operative First Amended Complaint.  Defendants now move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiffs have filed an opposition to the motion which contests dismissal of certain claims and concedes that other claims fail to state a claim as currently pled.

### LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted).

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain

sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"), *cert. denied*, 132 S. Ct. 2101 (2012). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted).

## DISCUSSION

Defendants move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of jurisdiction under Rule 12(b)(1).[1] Defendants contend that they are immune from suits for monetary damages in their official capacities and are not vicariously liable for the acts of others in their individual capacity. They also argue that each of Plaintiffs' claims fail to state a claim. Finally, Defendants reassert their contention that Plaintiff Garcia's claim is barred by the statute of limitations. The Court addresses each argument in turn.

### A.  Plaintiffs' Section 1983 Deliberate Indifference Claim

In their opposition brief Plaintiffs concede that Defendants Nguyen and Chernow cannot be sued in their official capacity. (Dkt. No. 65 at 6:26-7:2.)  Accordingly, Plaintiffs' claims against Nguyen and Chernow in their official capacities are dismissed without leave to amend.

With respect to Plaintiffs' claims against these defendants in their individual capacities, to state a claim Plaintiffs must satisfy the two-part test for deliberate indifference:  (1) the plaintiff

---

[1] The Court construes the motion as exclusively a motion to dismiss under Rule 12(b)(6).  A dismissal based on Eleventh Amendment immunity should be analyzed under Rule 12(b)(6) and not as a jurisdictional issue under Rule 12(b)(1). *See Steshenko v. Gayrard*, No. 13-CV-03400, 2014 WL 2120837, at *n.1 (N.D. Cal. May 20, 2014); *see also Elwood v. Drescher*, 456 F.3d 943, 949 (9th Cir. 2006) (stating that "dismissal based on Eleventh Amendment immunity is not a dismissal for lack of subject matter jurisdiction, but instead rests on an affirmative defense.") (quotation marks and citation omitted).

United States District Court
Northern District of California

must show a "serious medical need," and (2) the plaintiff must show that the defendant's response to the need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Indifference may appear where officials deny, delay, or intentionally interfere with medical treatment. *Id*. To establish deliberate indifference, a plaintiff must show a purposeful act or failure to act on the part of the defendant and resulting harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The Court previously dismissed Plaintiffs' deliberate indifference claim because Plaintiffs failed to tie their allegations to a particular defendant. Plaintiffs' FAC now contains specific allegations with respect to both Chernow and Nguyen, which the Court evaluates below.

### 1. Defendant Chernow

Plaintiffs allege that on the day before Mr. Machado's suicide, Defendant Chernow was the on-duty Facility A Psychologist and was therefore "mandated by established local operating procedures to conduct a direct mental health evaluation when an inmate is in need of possible" Crisis Bed referral and/or emergency admission. (Dkt. No. 45 at ¶ 48.) Plaintiffs further allege that Nurse Timme, who had examined Mr. Machado and assessed him "with a risk for injury with respect to delusional thinking," contacted Chernow regarding the situation, but that Chernow "believed that a formal crisis assessment was not warranted at the time based on her historical knowledge of Decedent, which was based on an evaluation she conducted in July 2011, and the presentation described by RN Timme." (*Id*. at ¶ 49.)

The FAC adequately alleges that Mr. Machado presented a serious medical need on October 23, 2011. A serious medical need exists if the failure to treat could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A heightened suicide risk or an attempted suicide is a serious medical need." *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010) cert. granted, judgment vacated sub nom. *City of Reno, Nev. v. Conn*, 131 S. Ct. 1812 (U.S. 2011) and opinion reinstated, 658 F.3d 897 (9th Cir. 2011) (internal citation omitted); *see also Yocom v. Grounds*, No. 11-5741, 2012 WL 2254221, at *6 (N.D. Cal. June 14, 2012) ("Plaintiff's history of mental illness and his hospitalization show a serious medical need.").

1    Mr. Machado repeatedly asked to speak to a nurse or mental health staff (Dkt. No. 45 at ¶

2  44 ("Decedent told the officer he needed to see a mental health staff member"), ¶ 46 ("he wanted

3  to speak to the on duty nurse"), ¶ 50 (requested that his vital signs be checked), ¶ 51 ("requested

4  to speak to the on-duty psychiatric technician").  He also repeatedly complained of chest pains

5  and dizziness.  (*Id.* at ¶¶ 45, 46, 53, 54.)   When Nurse Timme examined Mr. Machado, he stated

6  that he had demons in him, he was the devil, and he spoke as a third person as if he were the devil.

7  (*Id.* at ¶ 47.)  Nurse Timme thus assessed Machado as having a "risk for injury with respect to

8  delusional thinking."  (*Id.*)  Nurse Timme then contacted Defendant Chernow regarding

9  conducting a direct mental health evaluation and Chernow allegedly determined that this was not

10  necessary.  (*Id.* at ¶ 49.)  Defendants contend that it is not clear what, if any, of this information

11  was conveyed to Chernow.  For purposes of a motion to dismiss, however, the Court must accept

12  the allegations of the complaint as true and draw all reasonable inferences in Plaintiffs' favor.  It

13  is reasonable to infer that Nurse Timme conveyed to Chernow that she had assessed decedent as

14  having a risk for injury based on his statements that he had demons in him and that he was the

15  devil.  It is also reasonable to infer that Nurse Timme provided Chernow with at least an

16  abbreviated explanation of Mr. Machado's mental health history including his multiple suicide

17  risk evaluations.  Accordingly, Plaintiffs have sufficiently alleged that Chernow was aware of the

18  serious medical need.

19    The question then is whether Plaintiffs have alleged sufficient facts to show that

20  Chernow's response was deliberately indifferent as opposed to merely a difference of medical

21  judgment.  At a minimum, Plaintiffs have alleged that Chernow's decision not to conduct a direct

22  examination was a violation of established local operating procedures.  This allegation is

23  sufficient for purposes of a motion to dismiss. *Lemire v. California Dep't of Corr. & Rehab.*, 726

24  F.3d 1062, 1079 (9th Cir. 2013) (finding that there was a triable issue of deliberate indifference

25  where prison official failed to comply with orders designed to address "the prevention of, and

26  immediate response to, suicide attempts" which "require floor officers to continuously circulate

27  on an irregular schedule in between formal searches and security checks."); *Gibson v. Cnty. of

28  Washoe, Nev.*, 290 F.3d 1175, 1190-91 (9th Cir. 2002) (holding that there was a triable issue

1    where (1) jail officials knew that some combative detainees might suffer from mental illness, (2)

2    the jail had policies demonstrating that it was aware that such mentally ill individuals may require

3    urgent care, and (3) the jail had abandoned a prior practice aimed at addressing this need).

4    Accordingly, Defendants' motion to dismiss the Section 1983 claim as to Defendant Chernow is

5    denied.

6          **2.  Defendant Nguyen and Doe 1**

7          Plaintiffs contend that Defendant Nguyen was deliberately indifferent to Mr. Machado's

8    serious medical need because she should have provided decedent with multiple doses of the

9    anxiety medication rather than just the one dose which she authorized; however, there is no

10   allegation that anyone asked Nguyen to approve more than a single dose.  Rather, Plaintiffs

11   contend that Doe 1, the on-duty nurse at 8:10 p.m. on October 23, 2011, was called regarding Mr.

12   Machado's request for additional medication and Doe 1 "informed custody staff that Decedent

13   had received all that he would get and would see the doctor in the morning."  (Dkt. No. 45 at ¶

14   52.)

15         The bare allegation as to Nguyen is insufficient to state a claim for deliberate indifference.

16   *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that a prison official is deliberately

17   indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and

18   disregards that risk by failing to take reasonable steps to abate it).  As currently pled, Nguyen did

19   in fact respond to Mr. Machado's serious medical need and prescribed anti-anxiety medication.

20   Plaintiffs have not suggested that this decision was improper and the allegations are insufficient to

21   allow the Court to infer that she should have taken the further step of preemptively prescribing a

22   repeat dose of the medication or taken any other actions in response to PT Vaughn's call.

23         The allegation as to Doe 1 is that he or she "should have documented the encounter,

24   created a mental health referral, and contacted the on-duty psychologist and/or psychiatrists again

25   to inform them of Decedent's continuing state of mental health instability."  (Dkt. No. 45 at ¶ 66.)

26   However, there is no allegation as to what, if anything, Doe 1 was told regarding Mr. Machado's

27   mental health.  Thus, in contrast to the allegations as to Chernow, the facts as alleged with respect

28   to Doe 1 are insufficient to allow the Court to infer that Doe 1 was aware of the extent of

United States District Court
Northern District of California

9

decedent's mental health status and nonetheless decided not to order any further medication. Accordingly, the Section 1983 claim for deliberate indifference as to Defendant Nguyen and Doe 1 is dismissed with leave to amend.

### B.  Plaintiffs' Supervisory Liability Claim

Plaintiffs concede that Defendant Ngyuen was improperly sued for supervisory liability under the mistaken belief that she was the Chief of Mental Health Care at Pelican Bay at the time of Mr. Machado's death.  Plaintiffs contend instead that they have a claim against whoever was the Chief of Mental Health Care at Pelican Bay; however, "[a]s a general rule, the use of "John Doe" to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (internal citation omitted).  It is generally allowed where a plaintiff may not have the opportunity to discover the identity of unknown defendants prior to filing the complaint, such that "the plaintiff should be given an opportunity through discovery to identify these unknown defendants" prior to dismissal. *Id*.  Here, however, Plaintiffs arguably had the opportunity to conduct discovery prior to filing the FAC.  Indeed, in the parties' Joint Case Management Conference Statement filed August 15, 2013 Plaintiffs stated that they "intend to dispatch written discovery on or about August 23, 2013, to obtain relevant documents and to determine the identity of a number of Pelican Bay State Prison staff who are believe to be responsible for conduct alleged in the complaint, and who are presently named as DOE defendants.  (Dkt. No. 30 at 3:27-4:2.)

In any event, the FAC allegations as to the supervisory liability claim are identical to those in the underlying complaint which the Court previously determined were too general to support a claim for supervisory liability.  "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  A supervisor may be held liable under Section 1983 for "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of

United States District Court
Northern District of California

1   others." *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010) (internal

2   quotations and citations omitted).

3       Plaintiffs contend that supervisory liability is warranted because the Chief of Mental

4   Health Care at Pelican Bay and/or Defendant Chernow's supervisor failed to ensure that staffing

5   levels were sufficient to ensure that the on-duty psychologist was available to conduct a direct

6   evaluation when summoned.  (Dkt. No. 65 at 11:9-12:15.)  However, the FAC is devoid of facts

7   that would support a theory that a psychologist was summoned to evaluate Oscar Machado on

8   October 23, 2011 but failed to do so because of inadequate staffing levels.  Rather, the FAC states

9   that when Defendant Chernow, the on-duty psychologist, was summoned to conduct a mental

10  health examination she "decided against conducting a direct mental health evaluation of Decedent

11  after being contacted by RN Timme because she believed that a formal crisis assessment was not

12  warranted at the time based on her historical knowledge of Decedent."  (Dkt. No. 45 at ¶ 49.)

13  Plaintiffs also argue that they have alleged that Defendant Chernow had a history and propensity

14  for failing to show up when summoned and that she manifested such a propensity prior to and

15  during her employment.  (Dkt. No. 65 at 11:16-18.)  However, these facts are likewise not alleged

16  in the FAC.[2]

17      Accordingly, Plaintiffs have again failed to allege sufficient facts to state a claim of

18  supervisory liability.  Plaintiffs will be granted to leave to amend this claim one final time to

19  name either the Chief of Mental Health or another individual with supervisory authority; however,

20  Plaintiffs must include specific allegations demonstrating either personal involvement or a causal

21  connection. To the extent that Plaintiffs' theory is predicated on a policy or practice, Plaintiff

22  must allege that the defendant "implement[ed] a policy so deficient that the policy itself is a

23  repudiation of constitutional rights and is the moving force of the constitutional violation."

24  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citation and quotation marks

25

26  _____

27  [2] The Court denies Plaintiff's request for judicial notice and the documents attached thereto as
    they do not reference any of the parties to this action, and thus do not seek notice of an
    adjudicative fact pursuant to Federal Rule of Evidence 201.  The Court denies Defendants' request

28  for judicial notice as unnecessary as Plaintiffs do not dispute that Defendant Nguyen was not the
    Chief of Mental Health at Pelican Bay.

1   omitted).

2       **C.   Plaintiffs' State Law Claims**

3           **1.   Timeliness of Plaintiff Garcia's Claims**

4       Under the California Tort Claims Act, California Government Code § 911.2, a party has

5   six months to file suit following accrual; here, following denial of the claim by the California

6   Victim Compensation and Government Claims Board ("Claims Board").  *See Maynard v. City of*

7   *San Jose*, 37 F.3d 1396, 1406 (9th Cir. 1994) ("Pursuant to the California Tort Claims Act, a

8   plaintiff suing a city and its employees must present a claim to the city no more than six months

9   after accrual of the cause of action.").  The Claims Board denied Plaintiff Garcia's claim on April

10  27, 2012 and this action was filed December 21, 2012 – nearly two months after the deadline.  The

11  Court previously granted Defendant's motion to dismiss Plaintiff Garcia's claims as barred by the

12  statute of limitations, because the initial complaint did not allege any facts in support of her

13  argument that the statute of limitations should be equitably tolled.

14      Plaintiffs' FAC contends that Plaintiff believed that she could rely on the date Oscar

15  Machado's claim was denied rather than her earlier denial because they were filing a complaint

16  together and his claim was timely filed.  (Dkt. No. 45 ¶ 59.)  Garcia contends that this was "an

17  honest, inadvertent mistake" and that any prejudice to Defendants is marginal as their claims are

18  identical.  "The doctrine of equitable tolling can apply to the notice of claim procedures of Section

19  911.2(a)."  *Jaffe v. County of Santa Clara*, No. No. 03-00137, 2008 WL 2050813, at *3 (N.D. Cal.

20  May 13, 2008).  Under California law, equitable tolling applies where a plaintiff can show "(1)

21  timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in

22  gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct

23  by the plaintiff in filing the second claim."  *Lucchesi v. Bar–O Boys Ranch*, 353 F.3d 691, 694–95

24  (9th Cir. 2003) (citing *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 924, 191 Cal.Rptr. 681

25  (1983)).  The purpose of the equitable tolling doctrine "is to soften the harsh impact of technical

26  rules which might otherwise prevent a good faith litigant from having a day in court."  *Addison v.*

27  *State*, 21 Cal.3d 313, 319 (1978).  Here, there is no dispute that Plaintiff Oscar Machado's claim

28  was timely filed nor is there a dispute as to whether his claim is identical to that of Plaintiff

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    Garcia: it is.  Thus, any prejudice to Defendants of gathering evidence to defend Plaintiff Garcia's

2    claim is marginal at best.

3         As for the third factor, Defendants contend that Plaintiff's reliance was not reasonable

4    because the notice which accompanied the Claims Board's denial of her claim included the

5    following warning: "Warning - Subject to certain exceptions, you have only six months from the

6    date this notice was personally delivered or deposited in the mail to file a court action on this

7    claim" citing California Government Code section 945.6. (Dkt. No. 45-1.)  Defendants insist this

8    language put Plaintiffs on actual notice of the filing deadline and that knowing that they intended

9    to file a joint lawsuit, the only reasonable course of action was to do so by the deadline with

10   respect to Plaintiff Garcia's claim, not the later deadline associated with Mr. Machado's denial.

11   The Court agrees.  Ms. Garcia filed separately and earlier than Mr. Machado, and the denial was

12   sent to her address in Florida.  The denial letter expressly told Ms. Garcia that she had six months

13   to file her claim.  It was not reasonable for Ms. Garcia to believe that she could disregard the

14   deadline for her separately filed claim simply because she decided to join Mr. Machado in a

15   lawsuit.  To hold otherwise would render the six month deadline virtually meaningless in cases

16   involving more than one plaintiff.  Accordingly, Defendants' motion to dismiss Plaintiff Garcia's

17   state law claims as barred by the statute of limitations is granted without leave to amend.

18        **2.  Plaintiffs' Wrongful Death and Medical Malpractice Claims**

19        The elements of a California wrongful death claim are: "(1) a 'wrongful act or neglect' on

20   the part of one or more persons that (2) 'cause[s]' (3) the 'death of [another] person.'"  *Norgart v.*

21   *Upjohn Co.*, 21 Cal.4th 383, 390 (1999) (quoting Cal. Civ .Proc. Code § 377.60) (alterations in

22   original)).  The related claim for medical malpractice requires a plaintiff to establish: "(1) the duty

23   of the professional to use such skill, prudence, and diligence as other members of his profession

24   commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection

25   between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting

26   from the professional's negligence."  *Gami v. Mullikin Med. Ctr.*, 18 Cal. App. 4th 870, 877

27   (1993).

28        Plaintiffs' medical malpractice and wrongful death claims are predicated on the same

United States District Court
Northern District of California

1    allegations as their claim for deliberate indifference.  As such, for the same reasons the Court

2    concluded that Plaintiffs have alleged sufficient facts to state a claim for deliberate indifference as

3    to Defendant Chernow it necessarily follows that they have adequately pled claims against her for

4    wrongful death and medical malpractice. *See Lemire v. California Dep't of Corr. & Rehab*., 726

5    F.3d 1062, 1081-82 (9th Cir. 2013) (holding that the bar for a deliberate indifference claim is

6    much higher than that of negligence claim "[e]ven gross negligence is insufficient to establish

7    deliberate indifference to serious medical needs.")(internal citations and quotation marks omitted).

8         Likewise, just as Plaintiffs have failed to allege sufficient facts to state a deliberate

9    indifference claim as to Defendant Nguyen, they have failed to allege sufficient facts to state a

10    claim for wrongful death or medical malpractice.[3]  It is unclear what duty, if any, Defendant

11    Nguyen owed to Mr. Machado or how that duty was breached either at the time Nguyen evaluated

12    Mr. Machado in June 2011 regarding his placement in the Crisis Bed unit, or on October 23, 2011,

13    when she prescribed the one-time dose of the Vistaril.  In June 2011, Nguyen is alleged to have

14    evaluated Mr. Machado and left an open order for Thorazine, and after he made the noose on June

15    16, she placed him on suicide watch.  There is no allegation that Nguyen played any role in the

16    decision to discharge Mr. Machado from the Crisis Bed unit on June 22.  Rather, the next

17    allegation with respect to Nguyen is that she was contacted on October 23, and when Mr.

18    Machado's symptoms were described, prescribed anti-anxiety drugs for him.  There is no

19    allegation that she was asked to prescribe a further dose or that she in any other way breached a

20    duty to Mr. Machado on that day.  The nature of the duty itself is unclear as Plaintiffs have

21    conceded that she was improperly pled as the Chief of Mental Health at Pelican Bay and her actual

22    title at the time is unclear.  Accordingly, the wrongful death and medical malpractice claims

23    against Defendant Nguyen are dismissed without prejudice.  Plaintiffs shall be granted leave to

24    amend their complaint to include specific allegations regarding Defendant Nguyen if they can do

25    so.

26

27

28

---

[3] The same is true for Doe 1 for whom there are even fewer factual allegations beyond that he or she was the on-duty RN on October 23, 2011 and was contacted when Mr. Machado requested a second dose of medication and he or she declined to order a second dose.

1

2  **3. Violation of California Government Code § 845.6**

3        Section 845.6 provides that "a public employee, and the public entity where the employee

4  is acting within the scope of his employment, is liable if the employee knows or has reason to

5  know that the prisoner is in need of immediate medical care and he fails to take reasonable action

6  to summon such medical care." Cal. Gov't Code § 845.6.1.   Accordingly, "[i]n order to state a

7  claim under [section] 845.6, a prisoner must establish three elements: (1) the public employee

8  knew of or had reason to know of the need (2) for immediate medical care, and (3) failed to

9  reasonably summon such care." *Jett*, 439 F.3d at 1099 (*citing* Cal. Gov't Code § 845.6).

10  "Liability under section 845.6 is limited to serious and obvious medical conditions requiring

11  immediate care." *Lucas v. Cnty. of Los Angeles*, 47 Cal.App.4th 277, 287–88 (1996) (internal

12  citations and quotations omitted).

13        As with the preceding causes of action, Plaintiffs have stated a claim with respect to

14  Defendant Chernow, but not with respect to Defendant Nguyen or Doe 1.  Plaintiffs have alleged

15  that Defendant Chernow, as the psychologist on duty, was obligated to perform a direct evaluation

16  of Mr. Machado's mental health when contacted by Nurse Timme.  Defendant Chernow did not do

17  so despite Nurse Timme informing her of Mr. Machado's present mental health and his claims that

18  he had demons inside him.  This is sufficient to state a claim under Section 845.6.  In contrast, the

19  allegations as to Defendant Nguyen are insufficient to demonstrate that she knew or had reason to

20  know of Mr. Machado's immediate need for care after she prescribed him the one-time dose of

21  Vistaril.  With respect to Doe 1, there are no allegations as to what, if anything, he or she knew

22  about Mr. Machado's need for immediate medical care.

23        Accordingly, the motion to dismiss Plaintiff's California Government Code Section 845.6

24  claim is granted as to Defendant Nguyen and Doe 1.

25  **4.  Attorneys Fees under California Civil Code §§ 51 and 52.1**

26        Plaintiffs concede that they do not have a claim under Sections 51 or 52.1 which entitles

27  them to attorneys fees.  Defendants' motion to dismiss Plaintiff's request for attorneys fees under

28  Civil Code Section 51 and 52.1 is therefore granted.

15

1

2                                        **CONCLUSION**

3        For the reasons explained above, Defendants' motion to dismiss (Dkt. No. 59) is

4   GRANTED IN PART and DENIED IN PART as follows:

5        The motion is DENIED as to the claims against Defendant Chernow;

6        The motion is GRANTED with prejudice as to Plaintiff Garcia's state law claims;

7        The motion is GRANTED as to the claims against Defendant Nguyen and the Doe

8   defendants with 20 days leave to amend; and

9        The motion is granted as to Plaintiffs' request for attorneys fees under California Civil

10  Code Sections 51 or 52.1.

11       As discussed at the June 19, 2014 case management conference, this case is referred to a

12  magistrate judge for a settlement conference within 90 days.  The Court will hold a further case

13  management conference on August 7, 2014 at 1:30 p.m.  Plaintiffs' counsel may appear by

14  telephone.

15       **IT IS SO ORDERED.**

16  Dated: June 19, 2014

17                                    _____

18                                    JACQUELINE SCOTT CORLEY
                                      United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California